The next case called is number 122435, people ex rel. Berlin v. Bakalis, agenda number 6. Counsel, are you ready? Thank you, you may proceed. Just for the record, I understand that a motion for leave to cite additional authority was allowed this morning. Okay, thank you, Your Honor. And may it please the Court, Counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of Petitioner. The prosecution in this case sought mandamus relief from this Court in order to correct a statutorily unauthorized four-year MSR term that was imposed on Defendant Frank Giglio when he pled guilty with no agreement on sentence to a Class IV felony, violation of an order of protection, and ultimate relief received a sentence of three years in prison and a one-year MSR term. Now, this Court has ordered full briefing, and importantly, Defendant's responsive brief agrees on this most central point, that indeed it is a four-year MSR term that applies and that a mandamus order should issue. So the only point that's contested in the briefing is in part encompassed by the motion Your Honor just addressed, which is what should the exact contours of that mandamus order look like. It has been Petitioner's position throughout that that order should direct the respondent, Circuit Court Judge, to amend the sentencing order to make sure that the MSR term complies with the statute, which would increase it from one to four years. Defendant instead proposes that this Court direct the judge to vacate the sentencing order in its entirety, which would potentially create an opportunity for the judge to decrease the prison term to compensate for the need to increase the MSR term. Now, in that responsive brief, Defendant did not otherwise discuss what that would mean in practical terms, and there is an important fact here that Defendant has already discharged his prison term. So what does that mean? Well, in the reply brief, Petitioner attempted to address what we believe Defendant's position was by citing the appellate court case of People v. Form, which was a Whitfield case in the appellate court where there was an undisputed Whitfield problem. And, of course, as this Court is well aware under Whitfield, there are potentially two remedies that a defendant can pursue when there is a Whitfield violation. Either, number one, seek to withdraw his guilty plea, or, number two, the prison term can be shortened by the length of the unmentioned MSR term. Now, in Form, the defendant only sought the latter relief and said, I want my prison term shortened. But the appellate court said, wait a minute, that remedy is not available because your prison term has been discharged. Now, in this motion to cite additional authority, Defendant, in the motion, said, wait a minute, Petitioner, you sort of misunderstood what I was getting at, and we want to provide this case of People v. Jackson from this Court, so I will briefly address that case. And in Jackson, that was a case from this Court, but it concerned an apprendiation. The defendant was challenging the extended term portion of her sentence, and the State responded in part to say, no, that claim is moot because your prison term has been discharged. And this Court responded, no, the claim is not moot, and pointed to a provision in the Code of Corrections, which permits a criminal defendant to potentially credit any excess time spent in prison prior to being paroled against any future period that that person is ordered to serve on MSR given an MSR violation. And this Court said, because of that, the defendant's rights can still be affected by the length of her prison term, even though the prison term is discharged. So certainly I will acknowledge that Jackson and Form are in great tension, but rather than go farther down this path of whether the fact that one is a Whitfield case and one is an apprendi case, and whether that maybe could explain the different results, it seems that the attention should be shifted to a different aspect of this case. Yes, those two cases share the important factual circumstance of the prison term being discharged, but the difference, and it's an important difference, is that in both of those cases, the defendant was citing a constitutional infirmity in the length of the prison term, and was saying, I have a right to a shortened prison term. Is that remedy still available? But here a defendant is not claiming any right to a shortened prison term. He has conceded in his brief that if the MSR term, when the MSR term is increased, he will have no Whitfield claim under his facts. He will have no claim that his guilty plea was rendered involuntary. And he's not even claiming that the sentencing judge should automatically decrease his prison term. He's saying maybe in his discretion he may wish to. So really the true problem with defendant's proposal is that it overlooks the different purposes behind MSR on one hand and prison on the other, which this court has discussed even recently in the case of Brown v. Lamb from last summer, which is cited in Petitioner's opening brief. The prison term is there to punish the offender and to hopefully deter future criminal conduct. The MSR term is distinct. It's completely independent. And it serves the purpose of hopefully successfully reintegrating that prisoner back into society after being released from prison. And it is essentially an inflexible portion of the sentence. Certainly in the Whitfield context, there's been case after case that have noted that it's a set term of years by the legislature. It's inflexible. It cannot be negotiated away during plea negotiations. It cannot be omitted or shortened by the sentencing judge, either through inadvertence or through intent. And so what that means is that defendant's premise that the sentencing judge would fashion the prison term in light of the length of the MSR term is simply mistaken because they serve completely independent purposes. And if this court were to endorse defendant's suggestion, this would erode those cases that recognize these different purposes. It would, in effect, be inviting sentencing judges to change prison terms in light of MSR terms, but they serve distinct purposes. And that is why it's unsurprising that in Petitioner's opening, or in, sorry, defendant's responsive brief, the only cases he's providing for this premise are mandamus cases where the mistake that was discovered had to do with what the aggregate prison term would turn out to be, that the parties discover that their two terms have to be mandatory consecutive or there's a mandatory firearm. It does make sense for the sentencing judge to consider those types of factors when fashioning the base prison term because the aggregate prison term should appropriately reflect what punishment should be served by the defendant. But it is not true that the MSR term should have the same impact on the judge when deciding the prison term. Ms. Bendick, if this court should grant the relief request by the defendant and the trial court actually sentences him to one year in prison plus four years MSR, does the trial court have the power to release defendant from MSR based on time already served? Well, I suppose I haven't done the actual calculation to know how it would play out because as defendant himself notes in the motion, he's not saying we would all just pretend that he began to serve the MSR earlier in prison. That can't happen. It's only if he were to violate his MSR and be ordered to serve part of this additional three years in prison as an MSR violator, that that is where the credit would come in. So it wouldn't automatically shorten when he was charged with MSR. Does the judge have the power to do it? The judge has the power to reduce the prison term, yes. But whether that actually has a practical effect on when the MSR is completed, that is not clear because defendant is only claiming that that excess time would help him if he were an MSR violator. So it might not, if he never violates his MSR, it actually wouldn't change anything in a practical sense for when the MSR is completed. Yes, the judge could do it. My argument is not that the judge would lack that power to change the prison term. It's more a policy judgment of what do we want the prison term to reflect? What do we want the MSR term to accomplish? To say that the judge can change the sentence, you're saying that, are you asking, to be more precise, does your mandamus ask that this court vacate the sentencing order? Well, that's what the defendant is requesting. That's actually what we're pushing against. We're saying that the mandamus order should only direct the sentencing order to be amended to correct the MSR term. That the prison term should be left alone. It is defendant's position that the sentencing order be vacated in its entirety. And we'll acknowledge that there are mandamus cases where that is what the mandamus order specifically reads. But again, those are cases where the mistake discovered did concern the aggregate prison term. That yes, indeed, if two sentences will have to now be served consecutive, there is good reason for the sentencing judge to go back and reconsider whether the base prison term should be changed. And it is an aspect of the prison term that needs to be adjusted in light of the mandamus action. But that is not what we have here. Here we're talking about a correction only to the MSR. And my point is only that the sentencing judge should be encouraged to consider the length of MSR when fashioning the prison term. I guess I'm concerned about the nature of mandamus. The court has entered a final order here. As a piece, the sentencing order. Right, yes. And you're arguing that this court should order some of that final order to be modified, but not all of the final order. Is that what you're arguing? Yes. Yes. And that is true. And that is in light of the important fact that the prison term has been discharged. And there's longstanding precedent about what the purposes of MSR and the purposes of prison and how they are entirely independent of each other. In fact, we know from the record here, this particular judge, when the mistake was brought to his attention, he simply increased the MSR term. How did that happen? Well, it appears from the record that DOC, who is most familiar with these MSR terms  who then realized, oops, we've all had the wrong MSR term. It was brought to the judge's attention the day before he was set to be released from prison on MSR. And the judge's first inclination was, let me change it. It should be four years, and entered in an order to that effect. But later it had to be vacated in light of Casselberry. I assume that the defendant in some way was represented during that motion. I'm trying to think. In other words, was it ex-party? The state came in and said, oh, judge, would you fix your final order? And the judge said, okay. No, defendant provided the transcript in his appendix, so I'm just flipping through it to see what parties were actually present. And according to this, defendant was there without counsel. That is what the record reflects. Who's present? Yes, but the judge, once the term was increased and he came in as a pro se and said, wait a minute, why was this increased? Counsel was appointed at that point, and it was further litigated at that point. But all of this is to show, and actually this is a good transition for me to get to the second point from our brief, which is whether there needs to be an adjustment to how we are now dealing with correcting these statutorily unauthorized sentences in the wake of Casselberry. And certainly I know this court heard argument yesterday in People v. Vara and already began to discuss this issue. I listened to that argument and know that some of it was discussed yesterday, mostly in the fines and fees context. But this case provides additional reason for this court to consider whether the situation needs to be adjusted. After all, Casselberry is important, of course, for many reasons. Not only was there the abrogation of the void sentencing doctrine, there's the important point that Casselberry did so not out of a goal of curtailing correction of these mistakes, but in order to bring Illinois criminal law into line with the most current version of the Illinois Constitution and in line with Illinois civil law, which more precisely recognized that the term void only refers to judgments entered by courts lacking jurisdiction. And this category of cases of courts with jurisdiction entering statutorily unauthorized sentences should not be deemed void and challengeable at any time. And this court realized how making that holding would greatly affect the mechanism for correcting these errors and so pointed parties, including the prosecution, to this court's mandamus doctrine. Now, that in itself is important. It already shows two policy judgments, because after all, at the time, there were a limited number of available potential vehicles existing. There's mandamus already. There is state habeas corpus. There's petitions for relief from judgment under Section 214.01. And there's post-conviction petitions. Now, what we know about mandamus is it has two important characteristics that are helpful, that number one, the prosecution can use it as well as the defendant, and number two, it's not subject to temporal limits. Of those three other candidates, those can only be sought by the defendant and not the prosecution. And two of those candidates, post-conviction petitions and 214.01 petitions, are subject to temporal limits. So when this court pointed to mandamus, it already made that judgment that it needs to be available to the prosecution as well, and there needs to be no time limits, except perhaps in an extreme case, there are defenses of latches to mandamus. So the rule that you're proposing would be that a final judgment of sentencing could be attacked at any time. Yes, and that's already true, because mandamus can be brought in at any time. So that is, I mean, that's in mandamus is a collateral vehicle. But the defendant couldn't bring an attack at any time, but only the state could bring an attack on a final judgment at any time. No, both sides can. We actually propose that it should be available to both sides, because it's equally possible that the mistakes made will be to a defendant's detriment. We're trying to make this an easier process for both sides. And in this court or, excuse me, this case is a good illustration, because as we were just discussing, Justice Heist, when this mistake was brought to this sentencing judge's attention in the circuit court, his first impulse was, hey, I know this case. I see the statute. It should be four years. On the spot, he entered an order. If what the people are proposing here existed at the time, the correction would have been made already. After all, here we are 14 months later, and throughout this whole process, all of the parties have always agreed it should be four years, and yet the correction has not been made yet. And that is some of the downsides of mandamus, that certainly there is good reason that this court proceeds at a more deliberate pace, given the nature of most of its docket, addressing important constitutional questions, statutory construction. But for this task, correcting statutorily unauthorized sentences, this is almost a ministerial task, a clerical error almost. It's very rarely going to be disputed on the very narrow issue of what is the correct MSR term for this offense under these facts. And if the sentencing judge, circuit court judge, can make that correction on the spot, these problems will be addressed much more quickly. And after all, there's another aspect of mandamus that has a downside, and that is that this court is dependent on the litigants to bring the appropriate supporting record. This court is not otherwise familiar with these cases. And so if this court has any question about any aspect of the case, if there's any ambiguity, really in its normal functioning, the only step this court can take is to order full briefing and argument, which is what happened here. But the circuit court judge, the sentencing judge, knows the case, has the record, and much more promptly can address this issue. Ms. Bendick, am I correct that, as I think about the argument from yesterday on the same issue, there was much talk about going to rules? Sure. I haven't heard that from you. Is your position is that the fix is as simple as you're articulating, or are you promoting the same type of deliberate process that may have been promoted yesterday? Well, we certainly don't object if this court feels that there is good reason to have the deliberate rulemaking process. And we'll recognize that even yesterday's argument showed that there are aspects of this that need perhaps make it more complicated than perhaps I'm making it sound, that if this court thinks it should go through the rulemaking process, that is perfectly acceptable to us. We are merely taking this opportunity to say that the mandamus system is pretty good, but there are ways to improve it. And in these few years since, we have seen the downside of mandamus in terms of the more deliberate case, that this court is dependent on the records. These kinds of issues show that take that mandamus idea, shift it to the circuit court. So, yes, this court could, in its opinion, create a new rule, create this process. But if you think it's better to go through the deliberate process, that's fine as well. And certainly the fines and fees does show some of more of the complication here potentially. And I know it was discussed yesterday, but just to be very quick about it, what it does show is that for some reason in fines and fees, it is the appellate court that has been bearing the weight of correcting these. And it seems to be because it's the State Appellate Defender's Office who has picked up some of the slack to make sure that these mistakes are identified. But the appellate court is saying, wait a minute, why is it here? So if this court in Barrett makes the decision that Castleberry says it should all be going through mandamus, then all of those cases, which are dozens and dozens of cases, will be shifted here, or will simply go uncorrected, which is all the more reason why it is the circuit court that is the best place for these corrections to happen. Okay. You and I only have a few more seconds. I have a question. Absolutely, would you say the circuit court would know more about the case than a reviewing court? So why wasn't any of this raised in the circuit court? In other words, at sentencing, doesn't the State have an obligation to review the sentencing decision, sentencing order, to determine whether or not it has 30 days when the State could bring a flaw to the attention of the court? Yes. Yes, it would certainly be better if it's caught in the first instance, and this court should encourage that to be the primary venue and the primary time for this to be addressed. I will be the first to acknowledge that. There can be times, however, where there's an amendment to a statute and mistakes are made. I mean, mistakes are made. It is a mistake. There's no getting around that. But Castleberry already shows that this court has decided that weighing finality versus making these corrections, by pointing to mandamus, this court already decided that, well, we want these corrections to be made. We are not going to put the time constraints on it. Of course, it's better if it's caught in the first instance, but one can understand in a busy courtroom maybe an amendment was just made that hasn't trickled down to every judge and every ASA that these mistakes can happen. And sometimes they can happen to a criminal defendant's detriment too. It's not simply just on the state side. And so we also want these errors to be corrected for defendant's benefit as well. And so I know I'll be back here for rebuttal, so I see my time has expired. Thank you. Thank you.  Counsel, may it please the Court. My name is April Cantalla, and I represent the prevailing party in this cause, Defendant Frank Giglio, on behalf of the Office of the State Appellate Defender. Your Honors, with regard to the first issue, we seem to agree at this point that this issue of whether to remand this cause is not actually moot. This court can grant the relief that Mr. Giglio requests,  It's his position that the practical effect of a potential term of re-confinement being affected by a potential reduction in his prison term is enough of an effect to warrant remanding the cause for resentencing. So although he doesn't necessarily have an automatic right under Whitfield to have his prison term reduced or his guilty plea withdrawn, he does still have an interest in seeing if the circuit court would be amenable to reducing his prison term because of the effect it might have should he violate his MSR at some point in the future. And on that period of re-confinement, he could be required to serve in the Department of Corrections as a result of violating his MSR term. And opposing counsel spent a good deal of time discussing the different purposes served by a term of imprisonment and a term of MSR. However, the fundamental issue underlying this case seems to be how a criminal defendant sentence is viewed. Rather, whether it's viewed as its different component parts, each in isolation, prison term and MSR term, fines, whatever the case may be, or if it's viewed holistically such that the sentence is the sum of its component parts. It's Mr. Giglio's position that it should be the latter view, that a criminal sentence is the sum of its component parts. So the prison term and the MSR term, although they are two different parts of the criminal sentence, they are part of one whole period of commitment. As it's discussed in the briefs, the MSR term alters only the method and degree of confinement during the period of commitment. So a person on MSR remains subject to the period of commitment to the Department of Corrections for the period of time specified by the court. The MSR term, thus, should not be viewed in isolation and treated as separate from the remainder of Mr. Giglio's sentence. So as this court discussed in Castleberry, mandamus is improper if it substitutes this court's discretion or judgment for that of the official it directs. And simply ordering Judge McAuliffe to tack an additional three years onto the MSR term in this case would do just that. It would encroach upon his exercise of discretion in sentencing Mr. Giglio. There are many things that go into the calculus when a circuit court is rendering a sentencing decision. They are looking at the applicable sentencing range in terms of prison, the mandatory supervised release term, alternatives to imprisonment, such as probation or conditional discharge. They're looking at whether it's appropriate to impose fines. They're looking at a variety of different things in determining how much punishment does this person need and how much supervision do they require to achieve the ends of this court in punishing and rehabilitating them. And I think that it's clear when you look at the transcript of the sentencing hearing in this case that Judge McAuliffe had no intention of imposing an aggregate seven-year period of commitment, which is what would happen if an additional three years is just tacked onto the MSR. It would be the three-year prison term plus four years of MSR. At the sentencing hearing, the state actually recommended an extended prison term of four years plus one year of MSR, and Judge McAuliffe implicitly rejected that recommendation by imposing a three-year prison term with one year of MSR. In his view, the total amount of supervision for the period of commitment this particular defendant required was four years in sum. Had he been properly informed that a four-year MSR term would apply, he very well may have said, I don't think you need to spend quite as much time in prison. And although Mr. Giglio has served that three-year term at 50%, he could be required, should he violate his MSR, to go back for the remainder of the MSR term as well as for any time that he did not previously serve as a result of getting sentence credit. So there is a lot at stake here for him, and the circuit court should be given the opportunity to properly exercise its discretion in sentencing Mr. Giglio now that it is aware of what the appropriate sentencing guidelines are. And I think that it's important to note that the state is in the position to avoid this situation altogether. At sentencing... If we accept your argument, counsel, are we by accepting that argument indicating that perhaps the judge in this case didn't understand the different purposes between the sentence and MSR? No, Your Honor, I don't think it demonstrates a misunderstanding of the purpose of the sentence. Do you disagree with Ms. Bendick's comment earlier, argument earlier, that indicated there is a distinct different purpose between the punishment related to the sentence and the assimilation related to MSR? I think that it's true to some degree that there's obviously a difference in confining someone to the Department of Corrections and what the purpose of them serving a mandatory supervised release term. However, I think that this particular type of offense reduces the distinction between those two because of the Cindy Bischoff Law. Mr. Giglio is going to be required to serve his entire mandatory supervised release term on electronic monitoring. He will be wearing a GPS tracker for the duration of this mandatory supervised release term. So there is a greater supervision that is involved in this particular type of mandatory supervised release for this particular offense. So I think that the differences are less significant in this particular case. I think also, Your Honor, that the circuit court looks to the state for information about what the parameters are at sentencing. It's the state's duty to ensure that the circuit court is properly informed. When there has been a failing of that, it doesn't mean that the circuit court should be stripped of its ability to exercise its discretion in sentencing a defendant because it did not have all the information the first time around. I think it's also significant that Mr. Giglio's research has revealed not a single case in which this court has issued a writ of mandamus directing the circuit court to correct a statutorily nonconforming sentence without also vacating the previous sentence and remanding the cause for resentencing. The one exception to that is in cases where natural life imprisonment is mandatory. So as this court recognized in McCoskey, it remains within the discretion of the circuit court to determine within the permissible statutory sentencing range the length of each sentence to be imposed even after mandamus is issued. I also want to clarify one point with respect to the first issue. The state has argued that Mr. Giglio has conceded that he cannot challenge the constitutionality of his guilty plea based on the belated imposition of a four-year MSR term. That misconstrues Mr. Giglio's position. He acknowledged in his brief only that a correction of the sentencing error in this case does not support a constitutional claim which would warrant an automatic reduction of his prison sentence or withdrawal of his guilty plea under Whitfield. The operative word there is automatic, so Mr. Giglio is not asserting that he somehow precluded from challenging the voluntariness of his plea later on down the road. Moving to the, oh, one final note, sorry, about that first issue. I think that it's also, in terms of the practical effects of remanding this cause for resentencing, the length of a prison term imposed in a particular case might also inform future sentencing decisions. So I think that where the aggregate period of commitment is being viewed maybe later on down the road by a different sentencing judge, it matters that Judge McAuliffe thought that four years in total was enough supervision for this particular defendant in terms of the period of commitment imposed. And notably, had Judge McAuliffe imposed the sentence requested by the state, four years in prison plus one year of MSR, we would be raising a Whitfield claim before this court and arguing that he should be allowed to withdraw his guilty plea automatically. Moving to the second issue, the state has reproduced its argument here that it presented in People v. Barra and asked this court to use Mr. Giglio's case as a vehicle for ad hoc rulemaking that would allow the state to correct statutorily nonconforming sentences at any time by motion in the circuit court. I think that a crucial shortcoming of that proposed rule is the lack of a time limit. Even in the context of mandamus, the equitable document latches provides a presumptive time limit, albeit a somewhat murky one, for bringing these sorts of actions. That six-month limit from when the error was discovered or when the approval date does exist. So there is some equitable time limit that exists here. So I think that if this court was to go to the trouble of making a new rule to deal with these types of situations, it should definitely include some sort of time limit. Why? To preserve the finality of judgments. This court discussed at some length in Castleberry the importance of preserving the finality of judgments. And obviously the defendants who are affected by these belated sentence corrections, which almost always involve an increase in their sentence from what they originally thought that they had received, that's crucial to prevent that from happening as often as possible. And I think it's important to note that this court has been very careful. I believe it was Justice Tice yesterday who said during the argument in Barra that you've done a lot to establish how and when final judgment may be attacked. The state has not explained how its proposed rule can be reconciled with that body of case law. You just went through the trouble in Castleberry of abolishing the void sentence rule. In Peeble v. Bailey, you explained the very narrow and limited application of the revestment doctrine. So you've taken great pains to shore up the jurisdictional rules. It doesn't really make sense at this point to shoehorn a new jurisdictional loophole in to essentially make the state's life easier when they make mistakes in the trial court. To the extent the state is arguing that it should be allowed to bypass the existing procedure for seeking mandamus relief because it's inconvenient and a waste of this court's time, it's Mr. DiLeo's position that it's the state's duty to ensure that things are done right the first time, to provide the sentencing courts with the information they need at the time of sentencing. And failing to do that, it should be not especially easy for the state to come back later and say, oh, we made a mistake. We need to disrupt the finality of this judgment and seek correction of the sentence. Let's go back to this rule for a minute. You correctly point out that laches is an equitable remedy, right? And you say in your opinion that would apply to mandamus cases. If we were to take your suggestion on the rule and put a time limit to add to the rule, would we have some type of bifurcated system then where if you went to the trial court, this rule would indicate you have six months, for example, based on what you ask, or you have a laches argument if you bring a mandamus action to the Supreme Court. It wouldn't be too long, right, until you would say that the six months should apply to mandamus, regardless of the facts. That's where I'm going with this. Well, Your Honor, the actual parameters of the time limit to be imposed are something that I think would be an excellent subject for a committee to take up. There is an issue here, I think, with how these types of sentence corrections would interplay with pending appeals. So the timing for bringing this type of action in a circuit court while a case may be pending on direct appeal, including the sentence, that could get very messy. As we saw in this case, the state came to the circuit court and said, whoops, there was a mistake at sentencing, and the court said, oh gosh, I guess I can't argue with the statute, even though this defendant was told multiple times that he would only have to serve one year of MSR. I guess I better correct this sentencing error. That prompted Mr. Giglio to file a petition for post-conviction relief, and then take an appeal from the second-stage dismissal of that petition for post-conviction relief, which is sort of hanging out there in space right now, pending the outcome of this action. So that is something that would need to be considered, and is a great reason that this case is not the proper place to make a rule. This should be fully explored by committee. Public hearings should be held. Input from all of the stakeholders involved should be given, and perhaps a good rule could be crafted through that process. However, I think the fact that we're here today demonstrates that mandamus actually is a sufficient procedural mechanism for dealing with these types of problems. In addition, it's an appropriate mechanism for doing so. It's an extraordinary form of relief, and that is appropriate when we're talking about granted there was a mistake made. Everyone who can read the statute knows it should have been a four-year period of MSR. However, it should never be undertaken lightly to increase a dependent sentence after the fact. Mr. Giglio, as far as he's aware, served his entire sentence and is just free and clear at this point. That will no longer be the case should mandamus issue here. The state should be required to come to this court hat in hand and say, whoops, we made a mistake. Please grant this extraordinary form of relief. The reasons for requiring that include that the state has the ability to exercise its discretion. So if it thinks that a sentencing error was so insignificant that it doesn't warrant this extraordinary form of relief, then it need not seek leave. And this court, in turn, has the option of denying leave or dispensing with the briefing requirement if it feels that the procedure is too cumbersome for a particular sentencing error. And I think it's also important, Your Honors, to consider what is at stake in this case. When we talk about imposing an additional three years of MSR, we're talking about seriously limiting a person's liberty for three more years than the state. Add to that the fact that Mr. Giglio must be subjected to electronic monitoring for the duration of his MSR term. And it's clear that this case does not involve a mere routine sentencing error, to use the state's words, which lends itself to correction by anything less than the extraordinary remedy of mandamus. So, Your Honors, in sum, I think that it's crucial to follow the normal Rule 3 rulemaking procedures if a new procedure is warranted for dealing with statutorily nonconforming sentences. It's Mr. Giglio's position that when we're dealing with correction of a sentencing error that goes to something as fundamental as changing the period of commitment, that an extraordinary form of relief may very well be appropriate. And that, regardless, the circuit court should be given the opportunity to exercise its discretion in resentencing the defendant once it has all of the information. So, if there are no more questions, Your Honors, I will briefly conclude. Mr. Giglio asked that upon issuing a writ of mandamus, this court vacate his sentence and remand this cause for resentencing in conformance with statutory law, including the imposition of a four-year term of MSR. He also asked that this court decline to adopt the state's proposed rule in deciding this cause. Thank you. Thank you. Marika Butler. Thank you. I'm turning to the first point, the merits of this case first. The question of whether increasing the MSR term here would subsequently create a field claim or a basis to seek to withdraw a guilty plea is actually not something this court needs to consider in this action. The only issue here is what is the proper MSR term. If defendants wants to somehow appeal once that new judgment is issued, number two, my opponent sought to cite the sentencing order about how the judge was fashioning this sentence. I would also point this court to pages 47 through 49 of defendant's appendix. That's the transcript of when this mistake was brought to the circuit court's attention. When he realized that by statute he had to increase, or that the MSR term should have been four years, he did not say, oh wow, I wish I could shorten the prison term now that I know the MSR term will be lengthened. He only said, to the contrary, that is out of my hands. I am not in control of the MSR term. Now that is in line with the petitioner's position. The MSR is separate and it serves an entirely distinct purpose that does not enter into the sentencing judge's calculus. And finally, I wanted to just add upon my answer to Justice Tice's question during my opening comments to provide just one more point. You had pointed out that when this mistake was brought to the judge's attention, you wanted to know if counsel was present. It is true that counsel was not present, and maybe that's a reason why if this rule change that is proposed were implemented, that could be a part of the rule, that at such a proceeding there must be counsel present. We would have no problem with that, and in fact that would address the concern that you're raising. And so then I will turn then to this rule change to make just a few comments on that point. Counsel, before you do, opposing counsel indicated that although that the sentence was discharged, if a lesser sentence was imposed, it would have some impact on any future violation of the MSR term. You heard her say that? Yes. What's your response to that? I would agree that that seems to be what Jackson stands for, the case that she's citing, so I can't contest that point. So I would agree, yes, that now it is not entirely mooted under these facts. However, there still remains the point that types of things she cited such as, oh, he will be subject to electronic monitoring, that itself isn't punishment either. That is just how the legislature has chosen to implement the MSR purpose of reintegration. So that part of her argument is also a separate point. So the fact that that is true, though, besides not being moot, is that a reason that this court should consider remanding? If this court wishes to do so, that's fine, and we can acknowledge that point. I would point again to the record, the judge seems to not have any inclination to exercise this discretion, but of course this court could decide to take that step. And so then turning to the rule change, a lot of petitioners' points misconstrue what the rule change is actually being proposed here, and somehow use what is being proposed as a less extraordinary remedy than mandamus. And that is actually not what is intended. It is going to have the exact contours of mandamus. It only addresses when some aspect of the sentence is statutorily unauthorized. It's only correction of that, which in mandamus is also true. It's only when there's no discretion on the part of the public official that mandamus potentially lies. So that would be the same as mandamus. As to the time limits, it would be the same as mandamus. We are only making the point, not for the sake of making it easier for the prosecution to correct its mistakes, but to better apportion judicial resources in this task that this court already, in Casselberry, said, needs to be addressed in correcting these errors, what is the best way to accomplish that? And that is to shift it to the circuit court. At least from the state's perspective, we can file a mandamus in this court, or we can file a motion in the circuit court. Instead, our point of making it easier is instead, from the court's perspective, which court is better able to address this problem? And the circuit court, who is already familiar with the case and has the records on hand, and just the basic way in which the circuit courts function as opposed to this court, the circuit court is better able to correct those errors. And would this rule reinvest jurisdiction in the circuit court? No, it's not meant to reopen the direct appeal. It is meant, just like mandamus, to be a new collateral vehicle. And so, yes, there is the point that there might be a direct appeal on hand at the same time as a mandamus is pending. That can happen, too. This would be the same thing. Any appeal from this newly proposed motion would be limited to just whether it was correct to change the sentence in this way, to bring it in line with the statute. And once a new judgment is entered, once the correction is made, a new direct appeal can flow from that judgment that would be limited to what is only presented at that point, the new sentence. Of course, at the second direct appeal, it would not be a time to raise a trial error or something in some hypothetical case. It would be limited in that sense. But it is not meant to change where we are now in terms of having mandamus be the vehicle. It is simply shifting that task to the sentencing court. And I hear defendants say things like, well, maybe it shouldn't be easy for the state to correct its mistakes. Well, first of all, I'm not sure where defendant, I don't believe she cited authority for this notion that most of the time these mistakes are to a defendant's detriment. I don't know that that is true, and it seems to be not an obvious assumption to make. But it's, again, not trying to make it easier for the litigants. It's trying to make it the appropriate apportionment of judicial resources. At the sentencing hearing, did the state participate? Did the state discuss the appropriate mandatory surprise release period? I don't remember that specific point. I know it's a part of the state's supplemental record, the sentencing transcript. I don't remember for sure that the judge said it's one year's and nobody corrected him. So in any event, there was an opportunity, if that were, if the parties knew it, to bring it to the judge's attention. It was certainly mentioned on multiple occasions. So yes, the state made a mistake. But one can understand how, both in MSR and even more so in fines and fees, how occasionally there can be these mistakes. And of course, the prosecution and the court and everyone should endeavor to get this right the first time. But because in Castleberry, this court has already shown that weighing finality against making these corrections, that it's important that there is a mechanism for doing these corrections, we are merely offering this proposal to try to improve upon the process as it exists. And we do have no objection if this court feels it's better to be vetted through the normal rulemaking process. And so if there are no further questions, I would just conclude by saying that Petitioner asks that this court issue a mandamus order directing the judge to correct the MSR term and that this court consider this rule proposal. Thank you.